Stephen G. Recordon (SBN 91401)
**Recordon & Recordon**
225 Broadway, Suite 1900
San Diego, CA  92101
Phone: (619) 232-1717
Facsimile: (619) 232-5325
sgrecordon@aol.com

Clinton Rooney (SBN 221628)
225 Broadway, Suite 1900
San Diego, CA  92101
Phone: (619) 234-0212
Facsimile: (619) 232-1382
rooneycdi@gmail.com

Attorneys for Plaintiff DENISON WEAVER

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENISON WEAVER, | ) | CASE NO. '13CV0577 GPC BLM |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR VIOLATIONS OF |
| | ) | THE FEDERAL FAIR DEBT |
| vs. | ) | COLLECTION PRACTICES ACT, |
| | ) | THE ROSENTHAL ACT AND |
| CACH, LLC and NEUHEISEL | ) | CALIFORNIA PENAL CODE §§ 630 |
| LAW FIRM, PC, | ) | ET SEQ. |
| | ) | |
| Defendants. | ) | |

/ / /
/ / /
/ / /
/ / /

Complaint
-1-

## INTRODUCTION

1. Plaintiff Denison, through his counsel, brings this action to challenge the acts of CACH, LLC (hereinafter, "CACH," and of Neuheisel Law Firm, PC, (hereinafter "Neuheisel")(collectively, "Defendants") regarding attempts by Defendants to unlawfully and abusively collect a debt allegedly owed by Plaintiff, and to unlawfully and surreptitiously record private conversations with Plaintiff, willfully employing and/or causing to be employed certain wire-tapping, eavesdropping, recording and listening equipment in order to record, monitor or listen to the telephone conversations of Plaintiffs without the knowledge or consent of Plaintiffs, in violation of California Penal Code §§ 630 *et seq.*, thereby invading Plaintiffs' privacy, and this conduct caused Plaintiff damages.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692(k).

6. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), and out of Defendant CACH's violations of California's Fair Debt Collection Practices Act ("RFDCPA" or "Rosenthal Act").

7. As both Defendants do business in the State of California, and committed the acts that form the basis for this suit with the intent to cause effects in

Complaint
-2-

the State of California, this Court has personal jurisdiction over Defendants for purposes of this action.

8. Venue is proper as both Defendants do business in the County of San Diego, and the acts at issue took place in the County of San Diego.

## PARTIES

9. Plaintiff is a natural person, an adult, and resides in San Diego County, California.

10. Plaintiff is informed and believes and thereon alleges that Defendant CACH is a Delaware limited liability company, or "LLC," doing business in the State of California.

11. Plaintiff is informed and believes and thereon alleges that Defendant Neuheisel is an Arizona corporation doing business in the State of California.

12. Defendant CACH is a person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is therefore a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

13. Defendant Neuheisel is a person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is, therefore, a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

14. Defendant CACH, in the ordinary course of business, regularly, on behalf of himself, himself, or others, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), is, therefore, a debt collector as that term is defined by California Civil Code § 1788.2(c).

15.     Defendants CACH and Neuheisel claim that Plaintiff is obligated to pay a debt, and, therefore, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

16.     Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

17.     This case involves money, property or their equivalent, due or owing, or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

## FACTS COMMON TO ALL CAUSES OF ACTION

18.     On March 21, 2012, Defendant Neuheisel, on behalf of their client CACH, filed a complaint ("State Court Complaint") in the Superior Court of California for the County of San Diego against Mr. Weaver, in the matter of <u>CACH, LLC v. Denison Weaver</u>, et al, case number 37-2012-00094312-CL-CL-CTL.

19.     A copy of this March 21, 2012 State Court Complaint is attached as Exhibit A.

20.     In the above State Court Complaint, later served on Mr. Weaver, Defendants alleged:

A.     that there was a breach of a contract in writing between "HSBC Consumer Lending USA, Inc or its predecessor in interest" and Mr. Weaver;

B.     that there was simultaneously an "account stated," a new and different contract, between the same parties;

C.     that CACH had an enforceable claim against Mr. Weaver for restitution under a variant of the theory of *assumpsit*, called here "money lent or paid" in the amount of $8,145.67 by receipt of money on an account; and

/ / /

D.   that CACH had a right to recover attorney's fees in the amount of $1,200.00 under the contract they alleged.

**No breach of any written contract with "HSBC Consumer Lending USA, Inc or its predecessor in interest."**

21.   In fact, Mr. Weaver never entered into any written contract with "HSBC Consumer Lending USA, Inc."

22.   Further, "HSBC Consumer Lending USA, Inc" had no "predecessor in interest" regarding any interest in the account at issue, because *HSBC Consumer Lending, USA never owned the account at issue.*

23.   Defendants, therefore, misrepresented the existence of a written contract between Plaintiff Weaver and "HSBC Consumer Lending USA, Inc or its predecessor in interest," and misrepresented the amount of any debt arising from the breach of such a contract, as no such contract existed.

24.   By attempting to collect a debt based on a non-existent contract, Defendants also collected an amount not authorized by law or agreement.

**No "account stated."**

25.   Mr. Weaver never entered any "account stated" with HSBC Consumer Lending USA, Inc, or with any other party, regarding the account at issue.

26.   Defendants alleged that Mr. Weaver had previously entered into a new, written contract with HSBC Consumer Lending USA, Inc when, in fact, that was not true. Further Defendants knew that this claim was not true.

27.   At no time did HSBC Consumer Lending USA, Inc ever make an *offer* to Mr. Weaver to enter into an account stated in this matter.

28.   At no time did Mr. Weaver ever *accept* an offer by anyone to enter into an Account Stated agreement in this matter.

29.   At no time did Mr. Weaver and HSBC Consumer Lending USA, Inc ever discuss, contemplate, or otherwise engage in negotiates for *consideration* regarding an account stated.

Complaint

30. At no time was there ever an agreed balance of accounts; an account which has been examined and accepted by the parties. At no time was there ever an admission that the account was correct, nor was there a balance struck, nor was it agreed that a balance was due and owing from one party to the other.

31. Mr. Weaver never intended to form a new contract with HSBC Consumer Lending USA, Inc, or to strike a final balance with HSBC Consumer Lending USA, Inc in the amount of $8,145.67.

32. Furthermore, it was a legal impossibility for HSBC Consumer Lending USA, Inc to form an account stated with Mr. Weaver, as there were no prior transactions between them, and HSBC Consumer Lending USA, Inc never even owned the account at issue, and by extension, Mr. Weaver never owed a debt to HSBC Consumer Lending USA, Inc.

**Defendants' claim of a right to $8,145.67 under a theory of *assumpsit* is inflated and, therefore, false.**

33. Defendants alleged in the State Court Complaint that Mr. Weaver owed a debt of $8,145.67 to CACH based on a theory of "Money Lent of Paid," a variant of the theory of *assumpsit*.

34. The theory of *assumpsit* only allows for the recovery of damages for restitution; or the consideration or other benefit received, and results in a waiver of any contract between the parties.

35. *Assumpsit*, therefore, does not allow for the recovery of contractual compound interest or fees.

36. Contrary to Defendants' allegations, Mr. Weaver never received $8,145.67 in unpaid money, goods, or services, or other benefit or consideration of this value, on the account alleged, either from HSBC Consumer Lending USA, Inc or any other party.

///
///

Complaint

-6-

37. In fact, the balance of $8,145.67 alleged by Defendants was based in whole or in part in contractual compound interest and fees which are not recoverable under a theory of *assumpsit*.

38. Therefore, Defendants made a false representation as to the amount available to CACH under a theory of *assumpsit* and attempted to collect an amount not authorized by law or agreement.

**Defendant's *assumpsit* claims were time barred.**

39. Claims of *assumpsit*, with the exception of "Open Book Account," are generally subject to a two-year statute of limitations in California, which runs from the receipt of consideration.

40. The only receipt of consideration alleged in the State Court Complaint occurred on June 9, 2007, over four years prior to the filing of the State Court Complaint, on March 21, 2012.

41. Defendants, therefore, misrepresented the enforceability, and thus the legal status, of their *assumpsit* claims.

**No right to recover Attorney's Fees of $1,200.00.**

42. Defendants alleged in the State Court Complaint that CACH had the right to recover the sum of $1,200.00 in attorney's fees, subject to a written agreement with "HSBC Consumer Lending USA, Inc."

43. Plaintiff has and had no contract, written or otherwise, with HSBC Consumer Lending USA, Inc.

44. Later, in discovery, CACH claimed that two different contracts, with different parties, were the contracts at issue.

45. The first contract, which did exist, was a June 29, 2007 contract between Plaintiff and Household Finance Corporation of California.

46. This contract did not provide for any attorney's fees.

47. Defendants also claimed the existence of a second form contract, between Household Bank (Nevada) NA and Plaintiff.

Complaint

-7-

48.     This contract was a complete fabrication by Defendants, but as this form contract contained an attorney's fee clause, Defendant chose to falsely claim the existence of this contract, and pursued this claim all the way to trial.

49.     A copy of this Household Bank (Nevada) NA contract is attached hereto as Exhibit B.

**Telephone harassment and invasion of privacy.**

50.     Shortly after March 21, 2012, agents or employees of Defendant Neuheisel, who was in turn an agent for Defendant CACH, contacted Plaintiff by telephone.

51.     In the above telephone call, these agents or employees threatened, abused and harassed Plaintiff, causing duress sufficient to compel him to give these agents or employees Plaintiff's personal banking information, information normally considered confidential and private.

52.     These agents or employees recorded the above conversation, on behalf of Defendants, without Plaintiff's knowledge or consent, and recorded Plaintiff's personal banking information, information that could be used to access his bank account, without his knowledge or consent.

53.     Plaintiff believed that his conversation was private, and had a reasonable expectation of privacy that his personal banking information was not being recorded without his knowledge or consent.

54.     Each of the above conversations between Defendants and Plaintiff were, without Plaintiff's knowledge or consent, recorded, monitored, and/or eavesdropped upon by Defendants, causing harm and damage to Plaintiff. At no time during these calls was Plaintiff ever informed that Plaintiff's telephone calls were being monitored, recorded, and/or eavesdropped upon. At no time during these calls did Plaintiff give his consent for the telephone calls to be monitored, recorded and/or eavesdropped upon.

/ / /

55. After this point, after recovering from the duress of the above abusive telephone conversation, Plaintiff closed his bank account.

56. Defendants' employees or agents then called Plaintiff again, angry that their earlier ploy had not rendered a payment, and were again abusive towards Plaintiff.

57. Defendants' agents or employees then told Plaintiff that their telephone calls to Plaintiff were recorded.

58. Plaintiff is informed and believes, and thereon alleges, that during the relevant time period, Defendant Neuheisel had a policy and a practice of recording and/or monitoring telephone conversations with consumers. Defendant Neuheisel's employees and agents are directed, trained and instructed to, and do, record, monitor, and/or eavesdrop upon telephone conversations with the public, including Plaintiff and other California residents.

59. Plaintiffs are informed and believe, and thereon allege, that during the relevant time period, Defendant Neuheisel has installed and/or caused to be installed certain wire-tapping, eavesdropping, and listening equipment in its employees' or agents' telephone lines. Defendant uses these devices to overhear, record, and listen to each and every telephone conversation on said telephone lines.

60. Plaintiff is informed and believes, and thereon alleges, that during the relevant time period, Defendant has had all of its calls to the public, including those made to California residents, recorded, monitored, and/or eavesdropped upon without the knowledge or consent of the public, including Plaintiff and other California residents.

61. Defendant Neuheisel's conduct alleged herein constitutes violations of the right to privacy to the public, including Plaintiff and other California residents, and California Penal Code § 630 *et seq.*

///

///

**Defendant's further abusive conduct during litigation.**

62. As trial approached in the above State Court Action, it became obvious that Defendants would need to produce a witness at trial.

63. Defendants wanted to take advantage of California Code of Civil Procedure § 98, which allows a party in a California State court proceeding for damages of less than $25,000.00 to submit written testimony at trial, in the form of a declaration.

64. However, in order to take advantage of this provision of state law, the address of Defendants' prospective witness needed to be within 150 miles of the place of trial.

65. The witness Defendants wanted to use, Tom Vigil, lived and worked in Colorado, more than 150 miles from the place of trial in San Diego, California.

66. In order to remedy this inconvenient set of circumstances, on February 11, 2013, Defendants submitted a document entitled "Declaration of Authorized Agent in Lieu of Live testimony" to the state court, along with an additional document, entitled "Address of Affiants Pursuant to CCP § 98."

67. In this "Address of Affiants Pursuant to CCP § 98," Defendant Neuheisel claimed that the address of Tom Vigil was in Los Angeles, California.

68. A copy of this document, "Address of Affiants Pursuant to CCP § 98" is attached as Exhibit C.

69. This statement regarding Mr. Vigil's address was false, and designed to gain an unfair and illegal advantage at trial.

70. In his declaration, Mr. Vigil also claimed that CACH was entitled to $1,200.00 in attorney's fees, and claimed that there were simultaneously *two* contracts at issue, *with different parties*, when in fact there was only one contract at issue, and it did not provide for any attorney's fees.

71. A copy of Mr. Vigil's Declaration is attached hereto as Exhibit D.

///

72. On March 11, 2013, trial was held in the above State Court Action, and Defendants lost at trial on all of their claims.

ALLEGATIONS SPECIFIC TO CERTAIN CAUSES OF ACTION

FIRST CLAIM FOR RELIEF

(Violations of the FDCPA by CACH Neuheisel)

73. Plaintiff re-alleges and incorporates herein by reference the allegations contained in the paragraphs above.

74. Defendants CACH and Neuheisel violated the FDCPA. Defendants' violations include, but are not limited to the *following*:

    a. *15 U.S.C. §1692d* by using unfair or unconscionable means to collect a debt; and by engaging in behavior the natural consequence of which is to harass, abuse or oppress a person in connection with the collection of a debt;

    b. *15 U.S.C. §1692e* by making a false, deceptive or misleading misrepresentation in the collection of a debt;

    c. *15 U.S.C. §1692e(2)* by misrepresenting the character, amount and legal status of a debt;

    d. *15 U.S.C. §1692e(10)* by use of a false representation or deceptive means to collect a debt;

    e. *15 U.S.C. §1692f(1)* by collection of an amount not expressly authorized by an agreement creating a debt, or by law.

75. Plaintiff is entitled to actual damages sustained as a result of Defendants' conduct, in an amount according to proof; to statutory damages of $1,000; costs of the action; and reasonable attorney's fees, all pursuant to *15 U.S.C. §1692k*.

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

### (Violations of the Rosenthal Act by CACH)

76. Plaintiff repeats, re-alleges, and incorporates by reference all the allegations contained in the paragraphs above.

77. Based on information and belief, Defendant CACH's acts and omissions violated *California Civil Code § 1788 et seq*, including, but not limited to the following sections: *California Civil Code §§ 1788.17* and *1788.13*.

78. Based on information and belief, Defendant CACH's violations of *California Civil Code § 1788.17*, which incorporates several of the provisions of the FDCPA, include, but are not limited to, the following: Defendant CACH's violations include, but are not limited to the *following*:

   a. *15 U.S.C. §1692d* by using unfair or unconscionable means to collect a debt; and by engaging in behavior the natural consequence of which is to harass, abuse or oppress a person in connection with the collection of a debt;

   b. *15 U.S.C. §1692e* by making a false, deceptive or misleading misrepresentation in the collection of a debt;

   c. *15 U.S.C. §1692e(2)* by misrepresenting the character, amount and legal status of a debt;

   d. *15 U.S.C. §1692e(10)* by use of a false representation or deceptive means to collect a debt;

   e. *15 U.S.C. §1692f(1)* by collection of an amount not expressly authorized by an agreement creating a debt, or by law.

79. Defendant CACH also violated the Rosenthal Act at Civil Code § 1788.13 by making a false representation that the debt alleged may be increased by the addition of attorney's fees, when in fact no such fees may legally be charged.

///

///

80. Defendant CACHs' violations of the Rosenthal Act were willful and knowing, thereby entitling Plaintiff to statutory damages pursuant to *Civil Code § 1788.30(b)*.

81. As a proximate result of the violations of the Rosenthal Act committed by Defendant CACH, Plaintiff is entitled to any actual damages pursuant to California Civil Code § 1788.30(a); statutory damages in an amount up to $1,000.00 each pursuant to California Civil Code § 1788.30(b); and, reasonable attorney's fees and costs pursuant to California Civil Code § 1788.30(c) from Defendant CACH.

### THIRD CLAIM FOR RELIEF

**(Claim for Invasion of Privacy pursuant to California Penal Code § 630 *et seq.*
by all named Defendants)**

82. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83. California Penal Code § 632 prohibits one party to a telephone call from intentionally recording the conversation without the knowledge or consent of the other. Penal Code § 632 is violated the moment the recording is made without the consent of all parties thereto, regardless of whether it is subsequently disclosed. The only intent required by Penal Code § 632 is that the act of recording itself be done intentionally. There is no requisite intent on behalf of the party doing the surreptitious recording to break California or any other law, or to invade the privacy right of any other person. Plaintiff alleges that despite California's two-party consent rule, Defendant continues to violate Penal Code § 632 by impermissibly recording, monitoring, and/or eavesdropping upon its telephone conversations with California residents.

84. Californians have a constitutional right to privacy. Moreover, the California Supreme Court has definitively linked the constitutionally protected right to privacy within the purpose, intent and specific protections of the Privacy Act,

Complaint

-13-

including specifically, Penal Code § 632. "In addition, California's explicit constitutional privacy provision (Cal. Const., 1 § 1) was enacted in part specifically to protect California from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy. (Citations omitted). Thus, we believe that California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of section 632 prohibiting the recording of telephone conversations without the knowledge or consent of all parties to the conversation. *Kearney v. Salmon Smith Barney, Inc.*, (2006) 39 Cal. 4th 95, 125.

85. California Penal Code § 632 prohibits one party to a telephone call from intentionally recording the conversation without the knowledge or consent of the other party. Penal Code § 632 is violated the moment the recording is made without the consent of all parties thereto, regardless of whether it is subsequently disclosed that the telephone call was recorded. The only intent required by Penal Code § 632 is that the act of recording itself be done intentionally. There is no requisite intent on behalf of the party doing the surreptitious recording to break California law or any other law, or to invade the privacy right of any other person.

86. Plaintiff is informed and believes and thereupon alleges that Defendant Neuheisel employed and/or caused to be employed certain wire-tapping, eavesdropping, recording, and listening equipment on the telephone lines of all employees, officers, directors, and managers of Defendant Neuheisel.

87. Plaintiff is informed and believes and thereupon alleges that all these devises were maintained and utilized to overhear, record, and listen to each and every incoming and outgoing telephone conversation over said telephone lines.

88. Said wire-tapping, listening, recording, and eavesdropping equipment was used to record, monitor, or listen to the telephone conversations of Plaintiff, all in violation of California Penal Code §§ 631(a) and/or 632.6(a).

///

89.     At no time that these telephone conversations were taking place between Defendant Neuheisel or any employee, agent, manager, officer, or director of Defendant Neuheisel, and any other person, did Defendant Neuheisel inform Plaintiff that the interceptions, eavesdropping, wire-tapping, listening, and recording of their telephone conversations were taking place and at no time did Plaintiff consent to this activity.

90.     Defendant Neuheisel, knowing that it was unlawful and a violation of Plaintiff's right to privacy and a violation of California Penal Code § 630, *et seq.*, did intrude on Plaintiff's privacy by knowingly and/or negligently and/or intentionally engaging in the aforementioned intercepting, eavesdropping, wire-tapping, listening, and recording activities relative to the telephone conversations between Plaintiff, on the one hand, and Defendant Neuheisel on the other hand, as alleged herein above.

91.     Defendant Neuheisel's conduct of overhearing, recording, and listening to each and every incoming and outgoing telephone conversation with Plaintiff without his prior consent, as set forth above, constitutes a violation of California Penal Code § 630, *et seq*, and is substantially injurious to the public. The harm to Plaintiff and the members of Class One outweighs the utility, if any, of Defendant's practices.

92.     Based on the foregoing, Plaintiff is entitled to, and below herein prays for, his statutory remedies and damages, including but not limited to, those set forth in California Penal Code § 637.2.

93.     As at all times relevant to this action Defendant Neuheisel acted as an agent for Defendant CACH, Plaintiff is entitled to, and prays for, relief from Defendant CACH for the above acts.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants CACH and Neuheisel, and prays for the following relief:

1. An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendants CACH and Neuheisel, and for the Plaintiff;

2. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against Defendants CACH and Neuheisel, and for the Plaintiff;

3. An award of actual damages pursuant to California Civil Code § 1788.30(a) against Defendant CACH and for Plaintiff;

4. An award of statutory damages of $1,000.00 pursuant to California Civil Code § 1788.30(b) against Defendant CACH and for Plaintiff;

5. For the greater of statutory damages of $5,000.00 per violation or three times actual damage per violation pursuant to Penal Code § 637.2(a) against Defendant CACH and Neuheisel and for Plaintiff

6. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and California Civil Code § 1788.30(c) against Defendant CACH, and as to 15 U.S.C. § 1692k(a)(3) only, against Defendant Neuheisel; and

7. Such other and further relief this court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

DATED: March 12, 2013

/s/ Stephen G. Recordon
STEPHEN G RECORDON
Attorney for Plaintiff DENISON WEAVER